UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | |
| Plaintiff, | No. 21 CV 5026 |
| v. | |
| BEAU COSMUTTO, | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is plaintiff Progressive Northern Insurance Company's motion for summary judgment. [36].[1] For the following reasons, the motion is granted.

**Background**

Plaintiff Progressive Northern Insurance Company issued an Illinois Motorcycle Policy (Motorcycle Policy), to defendant Beau Cosmutto. [44] 2. On July 17, 2021, while on vacation in Hawaii, defendant was involved in a motorcycle accident and suffered personal injuries. [*Id.*] 5. Defendant incurred $223,407.45 in medical expenses. [45-1] 2-3. The at-fault driver was insured under liability policies with Allstate Property and Casualty Insurance Company (Allstate) and Liberty Mutual. [44] 5. The driver's policies' liability limits were $250,000 and $20,000, per person, respectively. [*Id.*]. Both Allstate and Liberty Mutual offered defendant the limits of the policies, $270,000 total, in full satisfaction of defendant's claims against the driver. [*Id.*] 5-6. After plaintiff advised defendant that it had no objection to and consented to defendants' acceptance of the settlement offer, defendant accepted and executed a full settlement agreement releasing any claims defendant may have had against the driver. [44] 6; [45-1] 5-9.

Six months before defendant settled with the driver, defendant sent plaintiff a letter demanding the limits of the under-insured motorist (UIM) coverage pursuant to the Motorcycle Policy. [20] 9. The relevant UIM coverage section in defendant's agreement with plaintiff states, in relevant part, that:

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

> If **you** [(the insured)] pay the premium for this coverage, **we** [(Progressive)] will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:
>
> 1. sustained by an **injured person**;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.
>
> **We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payments of judgment or settlements. However, this shall not apply if **we** and the **insured person** agree, without arbitration, that the **insured person** has suffered **bodily injury** or death, and also agree on the amount of damages within the limit of liability that the **insured person** is legally entitled to collect under this coverage.

[37-3] 19.

Two weeks later, on September 22, 2021, plaintiff filed the instant Declaratory Judgment action in the Northern District of Illinois, seeking a declaration that it does not owe defendant any UIM benefits under the Motorcycle Policy for the July 17, 2021 accident [1].

According to plaintiff, defendant is not entitled to UIM coverage, under the Motorcycle Policy's terms, for two reasons: (1) the at-fault driver is not the owner or operator of an "uninsured motor vehicle" as defined by the Motorcycle Policy for UIM coverage to apply; and (2) the Motorcycle Policy's limit reduction provision precludes the possibility of UIM coverage. [36] 2. The Motorcycle Policy defines an underinsured motor vehicle as a "vehicle of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less that the coverage limit for [UIM] Coverage shown on the declarations page." [37-3] 20. Parties agree the coverage limit for UIM under the Motorcycle Policy is $100,000 per person, $300,000 per accident. [46] 1 (citing 37-3 [3]). Plaintiff argues that because the sum of the at-fault driver's liability coverage, totaling $270,000, exceeds the Motorcycle Policy's UIM coverage limit of $100,000, the at-fault driver is not the owner or operator of an underinsured motor vehicle. [36] 2. The Motorcycle Policy also contains a limit reduction provision that reads, "[t]he limits of liability under this Part III for bodily injury will be reduced by all sums . . . paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible . . . ." [37-3] 23. Like plaintiff's first argument, plaintiff contends that under the limits reduction provision defendant's UIM coverage is reduced to zero because defendant was paid $270,000 to settle claims against the driver and this amount is greater than the Motorcycle Policy's $100,000 UIM coverage limit. [36] 2.

Defendant does not dispute that the Motorcycle Policy contains these provisions. [44] 3-4. Instead, defendant argues the limit reduction provision does not apply to the July 17, 2021 accident because the accident occurred in Hawaii and "Hawaii law applies to provide coverage to policyholders in the event out-of-state auto insurance policies deprive policyholders of benefits that would be available under Hawaii law." [43] 3-4 (citing *Abramson v. Aetna Cas. & Surety Co.*, 76 F.3d 304, 305 (9th Cir. 1996)). In support defendant contends there is no express choice-of-law provision in the Motorcycle Policy selecting Illinois law to govern. [*Id.*] at 5. Defendant points out there is no heading titled "Choice of Law" nor do the words "Choice of Law" or "Governing Law" appear anywhere in the Motorcycle Policy. [*Id.*] at 6. Plaintiff disagrees, arguing the Motorcycle Policy does contain a choice-of-law provision under the section titled "Terms of Policy Conformed to Statutes." [37] 3. The section states:

> If any provision of this policy fails to conform with the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the laws of the state listed on **your** application as **your** residence.

[37-3] 41.

Plaintiff contends that because defendant listed Illinois as his state of residence on his application for the Motorcycle Policy, coverage disputes are governed by Illinois law. [47] 3 n.1 (citing [44] 4). Defendant responds the "Terms of Policy Conformed to Statutes" provision is a conformity-to-statute clause that does not also operate as a choice-of-law provision. [43] 7.

During discovery plaintiff filed the pending motion for summary judgment.[2] Defendant filed a response [43], and plaintiff replied [47]. The motion is fully briefed and before the Court.

## Legal Standard

A party is entitled to summary judgment only if it demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The

---

[2] The Court exercises diversity jurisdiction under 28 U.S.C. § 1332(a)(1) over this case. Plaintiff is a Wisconsin corporation with its principal place of business in Ohio, defendant is an Illinois citizen, and the amount in controversy exceeds $75,000. [1] 1. Parties have consented to my jurisdiction over the case. [22].

controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (citation omitted). In answering this question, the Court construes all facts and draws all reasonable inferences "in favor of the party against whom the motion under consideration was filed." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (citation omitted).

## Discussion

The Motorcycle Policy's "Terms of Policy Conformed to Statutes" section contains a provision that reads, "Any disputes as to the coverages provided or the provisions of this policy shall be governed by the laws of the state listed on your application as your residence." [37-3] 41. This case concerns whether this policy term constitutes a choice-of-law provision that effectively selects Illinois law to govern the UIM coverage dispute between the parties. The Court holds that the policy term does operate as a choice-of-law provision, that the provision unambiguously selects Illinois law to govern the instant UIM coverage dispute, and applying Illinois law to the dispute, plaintiff is entitled to declaratory judgment.

### I. Illinois's Choice of Law Rules Govern.

A district court exercising jurisdiction based on diversity, as it is in this case, must follow the choice-of-law rules of the forum state to determine the applicable substantive law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). As this suit was filed in Illinois, Illinois's choice-of-law rules will govern. *ProAssurance Specialty Ins. Co. v. Imperial Realty Co.*, 545 F. Supp. 3d 618, 620-621 (N.D. Ill. 2021) (internal quotations and citations omitted)). "Under Illinois's rules, an express choice of law clause in an insurance policy will determine which state's law to apply." *Id.* Generally, a contract's choice-of-law clause is respected "as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Tradesman Intern., Inc., v. Black*, 724 F.3d 1004, 1012 (7th Cir. 2013) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004)). A choice-of-law clause is unenforceable if it is unconscionable, immoral, illegal, contrary to public policy, or injures the public welfare." *Jackson v. Payday Financial, LLC*, 79 F. Supp. 3d 779, 785 (N.D. Ill. 2015) (citing *Thomas*, 381 F.3d at 705-06).

### II. Motorcycle Policy Contains a Choice-of-Law Provision.

To determine whether the Motorcycle Policy contains a choice-of-law provision the Court applies rules governing contract interpretation. *Founders Insurance Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010) ("Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an

4

insurance policy") (internal citations omitted). The Court's applies these rules "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* With these rules in mind, the Court directs its attention to the Motorcycle Policy's "Terms of Policy Conformed to Statutes" section, restated below, that parties dispute contains a choice-of-law provision.

> If any provision of this policy fails to conform with the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the laws of the state listed on **your** application as **your** residence.

[37-3] 41.

Defendant contends this section is a conformity clause that does not also operate as a choice-of-law provision. [43] 5. Defendant explains that for a choice-of-law provision to be effective it should be clear and unambiguous. [*Id.*] at 6 (citing *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill.2d 381, 393 (Ill. 2005)). To be clear and unambiguous, defendant argues, the choice-of-law provision must do two things - it should name the chosen state and its title should indicate the provision's purpose. [*Id.*] at 6 (citing *AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F.3d 126, 132-33 (2d Cir. 2018)). Because the section does neither, defendant argues the section is not a choice-of-law provision, and even if the section could be reasonably construed as such, it is ambiguous, and that ambiguity must be construed in favor of defendant. [*Id.*] at 9 (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212-13 (Ill. 1992)). The Court is unpersuaded by defendant and concludes the Motorcycle Policy contains an unambiguous choice of law provision for the following reasons.

### a. Motorcycle Policy's Choice-of-Law Provision is Unambiguous.

Insurance policy provisions that are clear and unambiguous "must be enforced as written unless doing so would violate public policy." *Schultz v. Ill. Farmers Insurance Co.*, 930 N.E.2d 943, 948 (Ill. 2010) (internal citation omitted). A policy provision is ambiguous if it is "susceptible to more than one reasonable interpretation." *Founders*, 930 N.E.2d at 1004. A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. *Id.* The Court "will not strain to find ambiguity where none exists, nor will it adopt an interpretation that rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *State Farm Mut. Auto. Ins. Co. v. Elmore*, 181 N.E.3d 865, 871 (Ill. 2020) (internal citation omitted). To determine whether a provision is ambiguous, the Court should consider the entire policy, assuming each provision was intended to serve a purpose, rather than consider the provision in isolation. *Founders*, 930 N.E.2d at 1004.

### i. Under the Policy Terms' Plain Meaning Parties Intended for Illinois Law to Govern Policy Interpretation Disputes.

"If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement they made." *Elmore,* 181 N.E.3d at 872 (internal citation omitted); *see also Greggs USA, Inc. v. 400 E. Pro. Assocs., LP*, 198 N.E.3d 1062, 1073 (Ill. App. Ct. 2021) ("If a court can ascertain [a contract's] meaning from the plain language of the contract, there is no ambiguity.") (internal citation and quotation omitted). A "choice-of-law clause" is "[a] contractual provision by which the parties designate the jurisdiction whose laws will govern any disputes that may arise between the parties." *Choice-of-Law Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, the Motorcycle Policy's "Terms of Policy Conformed to Statutes" section does just that. The section states, in relevant part: "Any disputes as to the coverages provided or the provisions of this policy *shall be governed by the laws of the state listed on **your** application as **your** residence*." [37-3] 41 (emphasis added). The section mirrors the language of the choice-of-law definition, using the verbiage "disputes . . . shall be governed," to place readers on notice that the provision is operating as a choice-of-law provision. [*Id.*]. The section continues to track the choice-of-law definition in designating a jurisdiction with the phrase, "by the laws of the state listed on your application as your residence." [*Id.*]. This phrase, when read in combination with defendant's application listing Illinois as his residence, conclusively designates Illinois law to govern coverage disputes. [44] 4. No other reasonable interpretation exists, under the terms' plain meaning, where Illinois law does not govern. *Founders*, 930 N.E.2d at 1004.

### ii. Policy Terms Are Not Latently Ambiguous as Motorcycle Accident Involved a Single Tortfeasor.

The Court finds no cause to reach beyond the plain meaning of the provision's language to search for latent ambiguity. An "extrinsic fact or extraneous evidence" may create a "latent ambiguity" in otherwise "clear and intelligible language," necessitating a "choice between two or more possible meanings." *Ill. Emcasco Ins. Co. v. Tufano*, 63 N.E.3d, 985, 990, 992 (Ill. App. Ct. 2016) (presence of multiple tortfeasors created ambiguity in an otherwise non-ambiguous off-set provision). Here, defendant does not point to any extrinsic fact or evidence to support a finding of latent ambiguity in the application of the Motorcycle Policy's "Terms of Policy Conformed to Statutes" section. As the provision accounts for the situation at hand, a coverage dispute involving a single tortfeasor injuring a motorcyclist, no such special circumstance exists for the Court to find a latent ambiguity, and the Court must apply the provision's terms' plain meaning. *See Tufano*, 63 N.E.3d at 992; *see also Banes v. Western States Ins. Co.*, 616 N.E. 2d 1021, 1024 (Ill. App. Ct. 1993) ("Since there is only one tort-feasor here, there is no latent ambiguity in the policy."). As discussed

6

above, under the policy terms' plain meaning the section operates as a choice-of-law provision that designates Illinois law to govern coverage disputes.

### b. Defendant's Reading of Policy Terms is Contrary to Principles of Contract Interpretation.

A Court "will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. 2010) (citing *Cincinnati Ins. Co. v. Gateway Construction Co.*, 865 N.E.2d 395, 399 (Ill. App. Ct. 2007)). Defendant argues the "Terms of Policy Conformed to Statutes" section functions solely to "avoid inconsistencies between the statutory laws of the state in which the policy was issued and the terms of the policy and does not act as the source of law for interpreting the terms of the policy." [43] 8 (citing *Sonoco Bldgs., Inc. v. Am. Home Assurance Co.*, 877 F.2d 1350, 1352 (7th Cir. 1989)). Plaintiff responds, the Motorcycle Policy has a "separate . . . conformity-to-statute provision located . . . a few provisions before the policy's choice-of-law provision" and to interpret "both provisions as conformity-to-statute provisions would render one of the provisions meaningless and surplusage." [47] 4-5. The Court agrees and concludes defendant's interpretation would needlessly restate provisions in the "Terms of Policy Conformed to Statutes" section and thus, render provisions of the meaningless.

The first provision of the section states, "If any provision of this policy fails to conform with the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes." [37-3] 41. This is the standard language of a conformity-to-statute provision. *See Allstate Ins. Co. v. Boston Whaler, Inc.*, 510 N.E. 2d 1180, 1181 (Ill. App. Ct. 1987) (provision stating when policy "conflicted 'with the statutes in your [the insured's] state, the provisions are amended to conform to those statutes'" constituted a state law conformity clause). Thus, this first provision alone is sufficient to establish a conformity-to-statute provision within the Motorcycle Policy. The next provision reads, "All other provisions shall be given full force and effect" - standard language of a severability provision. [*Id.*]. *See Kepple & Co., Inc. v. Cardiac, Thoracic & Endovascular Therapies, S.C.*, 920 N.E.2d 1189, 1190 (Ill. App. Ct. 2009) ("contract contained . . . a severability clause, which provided that if any provision of the . . . contract was found to be unlawful, the remaining provisions of the . . . contract would still remain in full force and effect."). The last provision reads, "Any disputes as to the coverages provided or the provisions of this policy shall be governed by the laws of the state listed on your application as your residence." [*Id.*]. To construe this provision as a conformity-to-statute provision would be redundant and thus, superfluous given the plain meaning of the first provision in the section. In other words, removing the third provision does not reduce meaning of a conformity-to-statute provision found in the prior provision. As this Court must assume each provision was intended to serve a purpose, it cannot agree with defendant that two provisions were established for the singular purpose of

7

avoiding inconsistencies between applicable statutes and policy terms. *Founders*, 930 N.E.2d at 1004. The Court must assume the third provision serves a distinct purpose and as explained above, concludes this purpose is to "designate the jurisdiction whose laws will govern any disputes that may arise between the parties." *Choice-of-Law Clause*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Defendant's remaining arguments are unpersuasive. First, defendant claims a choice-of-law provision must name the chosen state and its title should indicate the provision's purpose. [43] at 6 (citing *AEI Life LLC*, 892 F.3d at 132-33). However, the cited authority in support of this proposition contains rejected choice-of-law provisions that are readily distinct from the choice-of-law provision in the Motorcycle Policy. Defendant points out that "the conformity-to-statute language at issue in this case is nearly identical to *AEI Life LLC*" and other contract dispute cases across the country. [43] 8; 892 F.3d at 132. This is unsurprising. As this Court has already acknowledged, the first provision of the relevant section contains standard language of a conformity-to-statute provision. [37-3] 41. *See Boston Whaler, Inc.*, 510 N.E. 2d at 1181. Having established that the first and second provisions of the relevant section are standard conformity-to-statute and severability provisions respectively, the Court's focus is on the section's third provision. None of defendant's cited cases contain identical or even similar language to the Motorcycle Policy's third provision that states a specific law "shall . . . govern" or what location's laws applies. [37-3] 41. Defendant's cited authority deals with cases where courts found a conformity-to-statute provision could not also function as choice-of-law provision. *See Sonoco Bldgs., Inc., Div. of Sonoco Prods. Co.*, 877 F.2d at 1352; *Crisler v. Unum Ins. Co. of Am.*, 233 S.W.3d 658, 661 (Ark. 2006) (internal quotations omitted); *DeCesare v. Lincoln Ben. Life Co.*, 852 A.2d 474, 481, 484 (R.I. 2004); *Ins. Co. of N. Am. v. San Juan Excursions, Inc.*, No. C05-2017Z, 2006 WL 2635635, at *3-4 (W.D. Wash. Sept. 12, 2006). In contrast, the Motorcycle Policy houses these functions in separate provisions – the conformity-to-statute provision in the first provision and the choice-of-law provision in the third. [37-3] 41. The Motorcycle Policy abides by the precedent set forth in defendant's cited authority mandating separate provisions for separate functions.

Next defendant argues that because plaintiff "seeks to utilize the conformity clause to exclude or limit [available] coverage . . . it must be read narrowly and should only be applied when its terms are clear, definite, and specific." [43] 10 (citing *Gillen*, 215 Ill.2d at 393). Defendant's argument misstates the relevant holding in *Gillen*. *Id.* In *Gillen*, the Illinois Supreme Court held "a policy provision that *purports to exclude or limit coverage* will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Id.* (emphasis added). Examples include setoff clauses and antistacking provisions. *See Gillen*, 215 Ill. 2d at 393 (setoff clause deducting UIM coverage for payments made under worker's compensation, disability benefits, or similar law was ambiguous and construed in insured's favor); *see also Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 562, 570 (Ill. 2005) (antistacking provision preventing insured from aggregating the limits of liability UIM coverage

8

where multiple vehicles were covered under one policy was unambiguous and enforceable as written). Here, even if the Court were to construe the Motorcycle Policy's choice-of-law provision as a conformity-to-statute provision, as defendant suggests, the provision remains enforceable under *Gillen*. This is because the purpose of a conformity-to-statute provision is to avoid inconsistencies between the statutory laws of the state in which the policy was issued and the terms of the policy, not to exclude or limit coverage like a setoff clause or antistacking provision. *See Sonoco Bldgs. Div. of Sonoco Prods. Co.*, 877 F.2d at 1352. Further, defendant's argument asks us to apply *Gillen* in light of plaintiff's anticipated application of the provision that would operate to exclude or limit defendant's UIM coverage, but *Gillen's* focus is on the *purpose* of the provision, as indicated in the Illinois Supreme Court's use of the phrase "*purports* to exclude or limit." *See* 215 Ill.2d at 393 (emphasis added). Simply because the application of the conformity-to-statute provision may inform other provisions that function to exclude or limit coverage, does not mean that provision also performs this same function for *Gillen* to apply. Regardless, as this Court has determined the Motorcycle Policy's relevant provisions are unambiguous, the provisions are enforceable as written unless contrary to Illinois fundamental public policy. *See Hobbs*, 823 N.E.2d at 564.

### III. Motorcycle Policy's Choice-of-Law Provision is Not Contrary to Illinois's Fundamental Public Policy.

Defendant argues that the Motorcycle Policy's limit reduction provision violates Hawaii's fundamental public policy, stating "Hawaii courts, including the Ninth Circuit of Appeals, utiliz[e] a presumption that Hawaii law applies to provide coverage to policyholders in the event out-of-state auto insurance policies deprive policyholders of benefits that would be available under Hawaii law." [43] 3-4. But in defendant's cited authority courts applied the presumption where Hawaii was the forum state. *See Abramson*, 76 F.3d at 305; *Abramson v. Aetna Cas. & Surety Co.*, 83 F.3d 1173, 1174 (9th Cir. 1996); *Ingalls v. Gov't Emples. Ins. Co.*, 903 F. Supp. 2d 1049 (D. Haw. 2012); *Mikelson v. United Servs. Auto. Ass'n*, 107 Haw. 192, 200 (Haw. 2005); *Lemen v. Allstate Ins. Co.*, 938 F. Supp. 640, 643-44 (D. Haw. 1995). That is not the case here. This case was brought in Illinois making Illinois the forum state. As stated above, in diversity cases, like this case, the Court follows the choice-of-law rules of the forum state to determine the applicable substantive law. *Auto-Owners Ins. Co.* 580 F.3d at 547 (internal citation omitted). As such, Illinois's, not Hawaii's, choice-of-law rules govern. *See ProAssurance Specialty Ins. Co.*, 545 F. Supp. 3d at 620-621. Under Illinois choice-of-law rules, a contract's choice-of-law clause is respected "as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Tradesman Intern., Inc.*, 724 F.3d at 1012.

The question then is whether the public policy of Illinois would be violated if Illinois law were to govern. The answer is no. State law reflects its public policy. *See Sulser v. Country Mut. Ins. Co.*, 591 N.E.2d 427, 429 (Ill. 1992) (reenactment of UIM

statute led court to conclude that UIM policy limitation does not offend public policy). The Court concludes that the Motorcycle Policy's choice-of-law provision does not violate Illinois's fundamental public policy. As the choice-of-law provision is unambiguous for the reasons explained above, it is given effect, and Illinois substantive law governs the parties' coverage dispute.

IV. **Plaintiff is Entitled to Declaratory Judgment Barring Defendant from Recovering UIM Coverage Related to the July 17, 2021 Accident.**

As stated above, insurance policy provisions that are clear and unambiguous "must be enforced as written unless doing so would violate public policy." *Schultz*, 930 N.E.2d 943, 948 (internal citation omitted). Here, the Motorcycle Policy explicitly lists the requirements to qualify for UIM coverage: (1) the insured must have sustained bodily injury; (2) in accident; (3) involving an uninsured or underinsured motor vehicle; and (4) the limits of liability under all applicable liability policies must have been exhausted by payments of judgment or settlement. [37-3] 19. Under the Motorcycle Policy's terms, defendant's July 17, 2021 accident did not qualify defendant for UIM coverage because the accident did not involve an uninsured or underinsured vehicle, the third listed requirement. [*Id.*]. The Motorcycle Policy defines an underinsured motor vehicle as a "vehicle of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less that the coverage limit for [UIM] Coverage shown on the declarations page," that limit being $100,000 per person, $300,000 per accident. [*Id.*] at 3, 20. Here defendant received the limits of the at-fault driver's liability policies, $270,000. [44] 5-6. As the sum of all applicable limits of liability ($270,000) exceeds defendant's UIM coverage limit ($100,000), the at-fault driver's vehicle does not qualify as an underinsured vehicle under the Motorcycle Policy, and defendant does not meet the requirements to be entitled to UIM coverage.

Further, enforcement of the Motorcycle Policy's UIM coverage provisions does not violate Illinois public policy. The Illinois Supreme Court has determined that UIM coverage provisions in general do not contravene public policy. *See Sulser*, 591 N.E.2d at 429, 431 (UIM policy's setoff of worker's compensation benefits is not contrary to public policy). Moreover, the Illinois Insurance Code expressly authorizes the use of UIM coverage provisions in motor vehicle insurance policies. 215 ILL. COMP. STAT. ANN. 5/143a-2(4) (West 2022) ("The limits of liability for an insurer providing [UIM] coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle"). "In enacting both [the uninsured and underinsured motorist statutes] the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser*, 591 N.E.2d at 429, 430. In other words, defendant is entitled to, at most, the full limit of

his UIM policy, $100,000. *See Tufano*, 63 N.E.3d at 995. As the Court in *Susler* explained:

> Under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties. Section 143a(4), governing uninsured motorist coverage, provides that the insurance company is entitled to deduct the proceeds of any settlement or judgment against the tortfeasor from the payment it makes to the insured. For example, if the policyholder received $100,000 in a settlement with the uninsured tortfeasor, the insurance company would have no obligation to make payment to the insured policyholder.

591 N.E.2d at 430.

As *Susler* makes clear, because defendant in this case recovered in settlement $270,000 from the at-fault driver, under his $100,000 UIM policy, plaintiff has no obligation to make payments to defendant. The Court will not interpret a provision designed to "fill the gap" between the claim and the tortfeasor's insurance, to allow defendant to recover amounts from plaintiff over and above the coverage provided by the UIM policy. *Id.*

Even viewing the evidence in the light most favorable to defendant, no reasonable jury could find that defendant is owed UIM coverage benefits under the Motorcycle Policy. Plaintiff is therefore entitled to summary judgment on plaintiff's declaratory judgment claim.

## Conclusion

Plaintiff's motion for summary judgment [36] is granted. The court issues the following DECLARATORY JUDGMENT pursuant to 28 U.S.C § 2201: Progressive Northern Insurance Company does not owe Beau Cosmutto underinsured motorist bodily injury benefits under the Illinois Motorcycle Policy No. 939625878 with respect to the car accident on July 17, 2021.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 15, 2023**